UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLIE BARR, a married person, and BRAD BARR, a married person,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY OF ROSLYN, a Washington municipal corporation; CITY OF CLE ELUM, a Washington municipal corporation; CLE ELUM POLICE DEPARTMENT, an agency of the CITY OF CLE ELUM,<br><br>　　　　　　　Defendants. | NO. CV-09-3002-JPH<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## 1. INTRODUCTION

Plaintiffs brought this action alleging violations of the United States and Washington State Constitutions and state laws of conversion, trespass to chattels and defamation in Kittitas County Superior Court. The matter was removed to Federal Court pursuant to 28 U.S.C. 1441 and 1443 (Ct. Rec 1). The parties consented to disposition by a Magistrate Judge (Ct. Rec. 4).

Defendants deny all claims and move for summary judgment of dismissal (Ct. Rec. 14). Prior to argument, Plaintiffs agreed to withdraw all federal claims as well as the state law defamation claim. (Ct. Rec. 25)

The matter came on for oral argument on January 14, 2010. Defendants were represented by Kirk Ehlis, Esq. of Menke, Jackson, Beyer, Ehlis and Harper, LLP. Plaintiffs were represented by David Browitt, Esq.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

## 2. SUMMARY JUDGMENT

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir. 1975), overruled on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564 (9th Cir. 1990). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party bears the initial burden of establishing that there is no genuine issue of material fact. Id; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

After the moving party makes a properly supported motion, the responding party must present specific facts showing that contradiction is possible. British Airways Board v. Boeing Co., 585 F.2d 946, 950-52 (9th Cir. 1978). It is not enough for the responding party to point to the mere allegations or denials contained in the pleadings. Instead, a party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. The evidence must be more than a mere "scintilla"; the responding party must show that the trier of fact could reasonably find in its favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986). Accordingly, summary judgment should be granted "[i]f the evidence is merely colorable . . . or is not significantly probative." Eisenbergh v. Insurance Co. of North America, 815 F. 2d 1285, 1288 (9th Cir. 1987).

A disputed version of the facts alone is not enough to warrant denial of summary judgment. Gooden v. Howard County, Md., 954 F.2d 960, 965 (4th Cir. 1992). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. Gamboa v. King County, 562 F. Supp. 2d 1288, 1295 (W.D. Wash. 2008), citing California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

### 3. FACTS

The facts relied upon are either undisputed or taken in a light most favorable to the non-moving party for purposes of summary judgment. (Ct. Rec. 16 and 24).

The plaintiffs, Billie Barr and Brad Barr, are life long hunters. They have hunted in the upper Kittitas County area of Washington for decades. They have extensively hunted the areas adjacent to the communities of Roslyn and Cle Elum, Washington.

In 2006, Plaintiffs were each drawn for a special branch antler elk hunt to take place in December of 2006.

On December 23, 2006 Plaintiffs began their hunt as that was the opening day of the special hunt. Both Plaintiffs shot and killed elk on that day. However, the area where Billie Barr and Brad Barr discharged their high powered rifles and shot and killed the elk was within the City limits of the City of Roslyn.

The discharge of firearms within the City limits of Roslyn is prohibited by Roslyn City Code 7.40.060 and RCW 9.41.230.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 3

Both Plaintiffs acknowledge that they were within Roslyn City limits and both admitted that they would not have hunted in this area had they known it was within the City limits.

Plaintiffs were cited by Officer Fletcher of the Cle Elum-Roslyn police for discharging firearms inside the City limits of Roslyn in violation of Roslyn City Code and state law and in addition were cited for reckless endangerment in violation of RCW 9A.36.050.

A representative of the Washington State Department of Fish and Wildlife was called to the scene of the shootings, verified that the animals had been tagged and indicated that no state fish and wildlife laws had been violated. Plaintiffs were not cited with any game violations.

Plaintiffs were advised by Officer Fletcher that their firearms and the two downed elk were being confiscated. He made it clear to the Plaintiffs that the rifles were being confiscated as evidence. There is a dispute of fact as to whether he told the Plaintiffs that the elk were being confiscated "as evidence". The police report prepared by Officer Fletcher on 12/24/2006 says the elk and the heads of the elk were taken as evidence. (Ct. Rec. 18, Ex. 1) The elk carcasses were transported to Owens' Meats in Cle Elum. Most of the elk meat spoiled before it could be butchered and wrapped. The elk heads and antlers were taken away from Owens' Meats by the Cle Elum police chief over a month after the shooting.

After being cited, both Plaintiffs were prosecuted by Kittitas County. On March 7, 2007, both Plaintiffs entered into stipulations for orders for stay of proceedings with the Kittitas

County Prosecutor's office with regard to the charge of discharge of firearms within the city limits. (Ct. Rec. 21, Ex. E and F). The charge of reckless endangerment was dismissed by the prosecutor as part of the plea arrangement. Both Plaintiffs were represented by counsel at the time they entered into the Stipulations and they read, understood and agreed to the terms of the Stipulations.

On May 24, 2007 the Kittitas County Upper District Court entered Orders of Disposition of Property in both Plaintiffs' cases. Pursuant to the Stipulations for and Order for Stay of Proceedings which were incorporated into the Orders of Disposition of Property by reference, the Court released the hunting rifles to both Plaintiffs, but released to the Cle Elum Police Department the antlers of the elk for disposal as the Department saw fit. (Ct. Rec. 21, Ex. G and H)

Both Plaintiffs fulfilled the conditions of the Stipulations and the charge of discharging a firearm within City limits was ultimately dismissed.

### 4. DISCUSSION

**A. <u>Conversion and Trespass to Chattels</u>**

The elements of civil trespass include: (1) an act that interferes with a person's right of possession in the property; (2) intent to perform the act bringing about the interference; (3) causation; and (4) damages. Restatement (Second) of Torts §§ 216 – 222(1965).

Similarly, conversion is the act of willfully interfering with any personal property without lawful justification, which causes the

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

person entitled to possession to be deprived of that possession. Meyers Way Dev. Ltd. Partnership v. University Sav. Bank, 80 Wn. App. 655, 674-75 (1976), review denied 130 Wn. 2d 1015 (1976). Stated differently, "conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). The plaintiff has the burden of establishing ownership and some kind of property interest in the goods allegedly converted. Myers Way Dev., 80 Wn.App. at 675.

Here, the Defendants argue that the Plaintiffs can have no ownership or possessory rights in the killed elk because the elk were taken as a result of an illegal act, i.e. the discharge of firearms within the City of Roslyn. Defendants assert that the fact that Plaintiffs committed an illegal act has been established in the Kittitas County District Court and Plaintiffs are collaterally estopped from challenging that determination. See Exs. "E", "F", "G", and "H" to Ct. Rec. 21.

The State appellate courts have routinely opined that the State maintains sovereign ownership over wild animals and game found within the State. See State v. Moses, 79 Wn.2d 104,113 (1971). The legislature has thus declared what was already the law when it enacted the Fish and Wildlife Code, RCW 77.04 et seq., which states, in pertinent part, at RCW 77.04.012: "Wildlife...are the property of the state." Thus, up to the moment of any lawful hunt and kill, the State is the sovereign owner of the elk in trust for the common good of the citizens of the state.

Conversely, the Plaintiffs argue that since it was not against the law to hunt in the city limits of Roslyn and since Plaintiffs had all the required permits and licenses, they acquired a possessory or ownership interest in the elk. Plaintiffs stress that no game law violations were brought against them. Plaintiffs argue that there is a genuine issue of material fact about whether the elk were confiscated "as evidence" and that they should be given an opportunity before the jury to convince the trier of fact that they had a superior claim of ownership and possession.

<u>Elk as Evidence</u>

First of all, there is a dispute about whether the elk were confiscated as evidence. Plaintiff submits that the elk were not handled as evidence should be and that there are problems with the chain of custody. They have put in their declarations that they were never told by Officer Fletcher that he was seizing the elk as evidence. And, quite frankly, Officer Fletcher may have decided to confiscate the elk because he was afraid for the Plaintiffs' safety from the large angry crowd that gathered after the shootings and/or because he did not want to "reward" the Plaintiffs with the trophy elk after they were shot following commission of the crime.

Defendants submit that the elk were taken as evidence as reflected in the police reports, in Officer Fletcher's declaration and in the acknowledgments made by the Plaintiffs during the criminal proceedings in Kittitas County.

But the dispute of fact is not <u>material</u> to a determination here. Whether or not the elk were confiscated as evidence or for any other reason begs the real question which is <u>whether the Plaintiffs could acquire a possessory or ownership interest in the dead animals</u>

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

<u>when they clearly and admittedly killed the elk as a direct consequence of violating the law by discharging their rifles within the city limits</u>.

The Court finds that they could not and did not acquire such possessory or ownership interest. A disputed fact is "material" only if it would affect the outcome of the suit. Anderson v. Liberty Lobby, supra, at 248.

The elk remained the property of the state because the Plaintiffs took them by illegal means. State v. Cramer, 167 Wn. 159, 164 (1932). Cramer, *supra*, involved trapping fish out of season. The fishermen argued, much like Plaintiffs here, that because the statute which they pleaded guilty to violating did not provide for forfeiture of the fish that there should have been no forfeiture. The State Supreme Court disagreed and held:

> "The fish were the property of the [State] until such time as they were lawfully reduced to possession, and never having been lawfully reduced to possession, they continued to be the property of the state, and should have been returned to the state."

When parties opposing summary judgment controvert only facts that are not material to the summary judgment motion, the defendants' motion for summary judgment should be granted. Rozek v. Topolnicki, 865 F.2d 1154, 1156-58 (10th Cir. 1989).

<u>Judicial Estoppel</u>

The doctrine of judicial estoppel is intended to protect the integrity of the judicial system. <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1285 (11th Cir. 2002). Or, as more fully explained by the Ninth Circuit:

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

> The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. 'The policies underlying preclusion of inconsistent positions are "general consideration(s) of the orderly administration of justice and regard for the dignity of judicial proceedings."' Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts."' Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion . . . Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion in the same proceeding or a prior one.

Russell v. Rolfs, 893 F. 2d 1033, 1037 (9th Cir. 1990).

Plaintiffs' argument is that although they agreed not to challenge the police reports and that the information contained in those reports was sufficient to establish their guilt, they never waived or gave up their right to be compensated for the loss of the elk they shot. At oral argument, Plaintiffs contended that, in fact, since the charge was ultimately dismissed, they were never convicted of any crime and cannot be estopped judicially from now claiming compensation for the lost elk.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

Both arguments ring hollow when viewed against the documents they signed. In the criminal proceeding, the Plaintiffs both agreed in the Stipulation For and Order Staying Proceedings (Stipulation) that they would not challenge the police reports and that the information contained in those reports was sufficient to establish their guilt. Ct. Rec. 21, Ex. E and F.

Significantly, the Plaintiffs and the State agreed in the Stipulation that only the rifles used in the shooting would be returned to the Plaintiffs and that the "antlers that were taken as evidence" would <u>not</u> be returned to the Plaintiffs. See page two of three of the Stipulation. That this provision was clearly called to the Plaintiffs' attention cannot be disputed because originally it had been contemplated that the antlers would be returned to Plaintiffs but that language was crossed out and initialed by the Plaintiffs.

Further, the police reports that Plaintiffs stipulate were accurate provide conclusive evidence that Plaintiffs discharged their weapons within the city limits and thereby violated a city ordinance and state law. Plaintiffs cannot now, in the face of those stipulations, be heard to say that they were never convicted of any crime for purposes of avoiding summary judgment here.

Finally, the Stipulation allows the court to enter orders consistent with the tenor of the Stipulation and the Plaintiffs agreed to be bound thereby. See page three of three of Stipulation. Within three (3) months time, the court entered an Order of Disposition of Property, which incorporates the Stipulation by reference and unambiguously recites the Plaintiffs' previous agreement to relinquish any right they may have had to

the elk antlers. Ct. Rec. 21, Exs. G and H. The Order released the antlers (the only remains of the elk by this time) to the "Cle Elum Police Department for disposal as they see fit."

There is no recognition of any property right in the elk in the Plaintiffs in either the Stipulation or the Order. The Court finds the Plaintiffs claims are barred by judicial estoppel.

### B. Article 1, § 3 of Washington State Constitution

Article 1, § 3 of the Washington State Constitution provides: "No person shall be deprived of life, liberty or property without due process of law."

It is incumbent on the Plaintiffs to show, through sworn testimony and admissible evidence, that their constitutional rights were violated. Plaintiffs have provided neither. As indicated, supra, the Plaintiffs never obtained any possessory interest in the elk they illegally killed. Further, after consultation with their criminal attorney, they stipulated that they would forfeit any right they had to the remains of the elk in order to avoid further prosecution. The record is devoid of any attempt or effort made by the Plaintiffs at any time from the date the criminal charge was made against them, through the date of dismissal of the criminal charge, to assert ownership of the elk.

Plaintiffs cite no case law that supports their claim that they were not afforded due process of law. The Washington State Supreme Court has established that substantive and procedural due process protections provided by Article I, § 3 are not broader

than those provided by parallel federal constitutional provisions. State v. Burton, 92 Wn.App. 114, 117-18 (1998).

It is a longstanding requirement that a party invoking the potentially greater protection of the Washington State Constitution must address the Gunwall factors ( State v. Gunwall, 106 Wn.2d 54, 61-62 ) Rafn Company v. State of Washington Dept. of Labor and Industries, 104 Wn.App. 947, 951 (2001). Here, Plaintiffs do not do so and have withdrawn all federal claims from consideration by the Court. The Court is justified in declining to consider the asserted claims under those circumstances. Rafn Company v. State at pp. 713.

Plaintiffs' claims under Art. 1, § 3 of the Washington State Constitution should be, and are, dismissed.

**C. <u>Article 1, S. 7 of Washington State Constitution</u>**

Article 1, § 7 of the Washington State Constitution provides: "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law". To demonstrate a violation of this section requires a two-step analysis; was there a disturbance of one's private affairs and, if so, was the disturbance authorized by law. State v. Athan, 160 Wn. 2d 354, 365-6 (2007), citing In re Personal Restraint of Maxfield, 133 Wn. 2d  332, 339 (1997).

Plaintiffs assert that their hunting activity on the day the elk were shot is a private matter and that the police should not have interfered with that "private" right. Plaintiffs do not cite any case law in support of that proposition.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

The term "private affairs" generally means "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from government trespass." Athan, 160 Wn.2d at 366, quoting State v. Myrick, 102 Wn.2d 506, 511 (1984). In making the determination the Court looks at the historical treatment of the interest being asserted, analogous case law, and statutes and laws supporting the interest asserted. Voluntary exposure to the public is relevant to [the Court's] inquiry and can negate an asserted privacy interest. Athan,160 Wn.2d at 366.

It strikes this Court that far from being a "private affair", hunting is a highly public affair, especially considering the circumstances known here. The plaintiffs obtained both a hunting license and a special permit from public, state agencies prior to commencing the hunt. The plaintiffs were subject to a public hunting season and to rules and regulations governing such hunts. Further, this hunt actually took place in a public zone (the Roslyn city limits) and was openly observed by numerous citizens, many of whom felt threatened by the discharge of the plaintiffs' weapons. The elk kills were subject to inspection by an officer of the state Fish and Wildlife department. The plaintiffs clearly knew that their activities were going to be occurring in a public place, even if they had not been within the city limits, because this was not a hunt conducted on a private game reservation.

The Court finds that all of these factors negate the Plaintiffs' contention that this was a private affair and the Court does not find that Article 1, § 7 affords the Plaintiffs any enhanced protection in the context of this case. State v. McKinney, 148 Wn. 2d 20 at 26-27 (2002).

Plaintiffs' claims under Art. 1, § 7 of the Washington State Constitution are dismissed.

### D. **Failure to Properly File Administrative Claim under RCW 4.96.020**

Having disposed of the Plaintiffs' claims on their merits, it is unnecessary to reach the procedural claim raised by the Defendants.

## 5. ORDER

The Defendants' Motion for Summary Judgment (Ct. Rec. 14) is GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE as a matter of law.

The Defendants are entitled to entry of a Judgment of Dismissal and taxation of costs pursuant to LR 54.1.

DATED this 25th day of January, 2010.

<div style="text-align:right">
s/ James P. Hutton<br>
JAMES P. HUTTON<br>
UNITED STATES MAGISTRATE JUDGE
</div>